**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JIMMY BAYMON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 18-CV-03931 ) |
| ABDON GARCIA, OTILIO VELEZ JR., RALPH MENEZES, AND AUGUSTUS ALIBI, | ) ) Hon. Judge Robert W. Gettleman ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

Plaintiff Jimmy Baymon ("Mr. Baymon"), by and through his attorneys, McDermott Will & Emery LLP, alleges for his First Amended Complaint against Defendants Abdon Garcia ("Officer Garcia"), Otilio Velez Jr. ("Officer Velez"), Dr. Ralph Menezes ("Dr. Menezes"), and Nurse Augustus Alibi ("Nurse Alibi") (collectively, "Defendants"), in their official and individual capacities, as follows:

**NATURE OF THE ACTION**

1. This is a civil action brought pursuant to 42 U.S.C. § 1983. Defendants violated the Fourteenth Amendment of the United States Constitution through their use of excessive physical force, use of excessive force by injecting Mr. Baymon with medication against his will, and by their excessive use of restraints while administering unauthorized medication to Mr. Baymon. In addition to the physical abuse Mr. Baymon endured from Defendants Officers Garcia and Velez, Mr. Baymon was forced to endure abuse by medical professionals by being unreasonably retrained in full body restraints and by being excessively injected with anti-psychotic, tranquilizer, and/or other medications by force and without appropriate medical orders or authorization.

**THE PARTIES**

2. Mr. Baymon is currently released on parole from Menard Correctional Center ("Menard"), and Mr. Baymon is a citizen and resident of Cook County, Illinois.

3. During the relevant time period, Plaintiff Baymon was a pretrial detainee at the Cook County Jail.

4. During the relevant time period, Defendant Officer Garcia was employed by the Cook County Jail as a correctional officer.

5. During the relevant time period, Defendant Officer Velez was employed by the Cook County Jail as a correctional officer.

6. During the relevant time period, Defendant Dr. Menezes was employed by Cermak Health Care, and was performing duties and working at the Cook County Jail.

7. During the relevant time period, Defendant Nurse Alibi[1] was employed by Cermak Health Care, and was performing duties and working at the Cook County Jail.

**JURISDICTION AND VENUE**

8. Mr. Baymon brings this action pursuant to 42 U.S.C. § 1983 to secure damages and relief from Defendants' actions, which were initiated under color of law and which violated the rights, privileges and immunities guaranteed to Mr. Baymon by the Fourteenth Amendment to the United States Constitution.

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

---

[1] Defendant Nurse Augustus Alibi is listed in documentation as both Nurse "Alibi" and Nurse "Alabi." On the representation of Defendant Nurse Alibi's counsel, Mr. Baymon refers to the Defendant as Nurse Alibi throughout.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial portion of the events occurred in Cook County, Illinois at the Cook County Jail, and because, on information and belief, one or more of the Defendants reside in Cook County, Illinois.

## **FACTUAL ALLEGATIONS**

11. On or about September 18, 2016 at approximately 8:30 p.m., Mr. Baymon was a pretrial detainee in the Cook County Jail. He was housed in North 2 cell house in the mental health unit.

12. Mr. Baymon was temporarily housed in Cook County Jail, and he had not yet been convicted for the crime for which he was being held. Mr. Baymon was a pretrial detainee, and the Cook County Jail records reflect and confirm Mr. Baymon's status as a pretrial detainee. Indeed, Mr. Baymon was not "admitted" to the Illinois Department of Corrections ("IDOC") until December 15, 2016. Mr. Baymon's "movement history" reflects that on December 15, 2016, Mr. Baymon was transferred "out" from the Cook County Jail to an IDOC facility. *See* Ex. A, Movement History.

13. On or about September 18, 2016, Mr. Baymon was sitting in the dayroom or common area participating in group activities.

14. Mr. Baymon asked Defendant, Officer Garcia if he could open Mr. Baymon's assigned cell door so Mr. Baymon could use the restroom. Officer Garcia opened the cell door for Mr. Baymon to use the restroom, and locked the cell door behind Mr. Baymon.

15. After using the restroom, Mr. Baymon started knocking on the cell door in an effort to get Officer Garcia's attention to unlock the cell door and release Mr. Baymon from the cell back into the day room. Mr. Baymon wanted to be released from the cell because the toilet in his cell was starting to back up and was flooding the cell floor.

16. Defendants Officer Garcia and Officer Velez, along with other personnel, entered the cell and dragged Mr. Baymon around the cell and punched Mr. Baymon. Defendants Officer Garcia and Officer Velez slammed Mr. Baymon against a wall. Mr. Baymon was also punched in his stomach, ribs, face, and head, and as a result suffered injuries to his wrist, ribs and face. Mr. Baymon never attempted to resist Defendants Officer Garcia or Officer Velez.

17. Mr. Baymon was placed in handcuff restraints that were so tight that they started cutting off circulation in his wrists and hands. Mr. Baymon was placed in a small segregation holding room. Mr. Baymon then informed Defendants Officer Garcia and Officer Velez that he needed medical attention.

18. Mr. Baymon then noticed that a nurse, who he believes to be Defendant Nurse Alibi, was preparing to give Mr. Baymon an injection. Mr. Baymon asked why he was being given a shot. Instead of answering, Defendant Nurse Alibi forcefully injected Mr. Baymon in the arm with a then-unknown substance.

19. Mr. Baymon was then taken to a different room by Defendants Officer Garcia and Officer Velez, and Defendants Dr. Menezes and Nurse Alibi accompanied the Defendant Officers to the other room. Although Mr. Baymon was already restrained by handcuffs, was complying with all instructions by the Defendant Officers, and was being held by the Defendant Officers, Defendants Dr. Menezes and Nurse Alibi ordered that Mr. Baymon be placed in leather full body restraints with a bag over his head, constricting any bodily movement by Mr. Baymon, blocking his vision and restricting his breathing.

20. After Mr. Baymon was confined in leather fully body restraints, Defendant Dr. Menezes injected Mr. Baymon a second time with additional then-unknown substance(s). After being injected by Defendant Dr. Menezes with the then-unknown substance(s), Mr. Baymon was

forced to remain in the leather full body restraints with a bag over his head for several hours. On information and belief, Mr. Baymon believes the substance that Defendant Dr. Menezes forcefully injected into him was a tranquilizer type of medication. The injection was medically unnecessary and, when combined with the leather full body restraints and bag placed over Mr. Baymon's head, coupled with the prior injection that he had received from Nurse Alibi, unreasonably restricted and restrained Mr. Baymon's bodily movement for purely punitive reasons.

21. In an effort to hide any video evidence of the unreasonable use of restraints and the excessive injections of a then-unknown medical substances on Mr. Baymon, Defendants coordinated and agreed not to capture the use of restraints or injections on video. Indeed, the only officer recording Mr. Baymon on a "Taser camera" intentionally pointed that camera away from Mr. Baymon in an effort to hide the unreasonable and excessive use of restraints and the excessive injection of the then-unknown medical substance into Mr. Baymon.

22. Mr. Baymon remained in the leather full body restraints for hours. The leather full body restraints entirely restricted Mr. Baymon's bodily movement and the bag covering his head impaired his ability to breathe. The leather full body restraints were so tight that they cut off the circulation to Mr. Baymon's arms and legs turning his hands and feet blue.

23. Mr. Baymon remained in the leather full body restraints until an officer Anderson arrived on the third shift. Based on Mr. Baymon's understanding and recollection, the third shift officers typically work between 11:00 p.m. and 7:00 a.m. At some point during that third shift, officer Anderson released Mr. Baymon from the leather full body restraints. At that time, Mr. Baymon noticed his hands and feet were blue and numb from the tightness of the full body restraints.

24. In addition to the physical beating and the unreasonable and excessive use of restraints against Mr. Baymon, Mr. Baymon suffered injury from Defendants Dr. Menezes and Nurse Alibi when they forcefully and repeatedly injected Mr. Baymon with then-unknown substances believed to be anti-psychotic or tranquilizer medications, without the approval or order of the facility psychiatrist. Mr. Baymon never consented to forceful injections with then-unknown substances by Defendants.

25. Notably, Mr. Baymon's movement history reflects no medical or clinical reason for restraining his movement at any time during September, 2016, further demonstrating that Defendants Dr. Menezes and Nurse Alibi forcefully injected him with then-unknown substances without medical necessity. *See* Ex. A, Movement History. Moreover, Mr. Baymon's "inmate alert" history does not reflect any medical issues on September 18, 2016, and the only medical alert in September 2016 occurred on September 22, 2016, the same day Mr. Baymon filed a grievance related to the September 18, 2016 incident. *See* Ex. B, Inmate Alert.

26. Mr. Baymon subsequently learned that Defendants Dr. Menezes and Nurse Alibi forcefully injected Mr. Baymon with one or more of olanzapine, diphenhydramine, haloperidol, lorazepam, phenytoin, ranitidine, and/or trazodone. Mr. Baymon did not consent to being repeatedly and unknowingly injected with this elixir of drugs.

27. Mr. Baymon filed a grievance report relating to this incident on or around September 22, 2016. *See* Ex. C, Grievance Report. While Mr. Baymon was interviewed as a part of the grievance process, the interview lasted only seven minutes.

28. Mr. Baymon completed the grievance process, but Mr. Baymon never personally received a decision from the grievance officer. Mr. Baymon exhausted the grievance process and Mr. Baymon's grievance was closed or otherwise denied on January 11, 2017 – nearly four

months after the incident occurred – by the Cook County Sheriff's Office, Office of Professional Review. Mr. Baymon was never informed of any rights to appeal the closure of his grievance.

## COUNT I (All Defendants)
## VIOLATION OF DUE PROCESS (42 U.S.C. § 1983)
## UNCONSTITUTIONAL USE OF RESTRAINTS

29. The allegations of paragraphs 1 through 28 are incorporated herein by reference.

30. As a pretrial detainee, Mr. Baymon has a substantive right to freedom from bodily restraint pursuant to the Fourteenth Amendment's Due Process Clause. Thus, Mr. Baymon could only be subjected to restraints that were reasonably related to the management of the confinement facility, and Mr. Baymon is constitutionally protected from the use of excessive or unreasonable restraints. If any bodily restraint constitutes punishment, then the restraint is unreasonable and violates the Constitution.

31. Freedom from unreasonable bodily restraint has always been recognized as a core liberty protected by the Due Process Clause.

32. As a pretrial detainee, Mr. Baymon was entitled to more considerate treatment than would be a convicted criminal (whose confinement is designed to punish) because pretrial detainees enjoy constitutionally protected interests in reasonably nonrestrictive confinement.

33. Here, the use of restraints against Mr. Baymon were plainly excessive due to the absence of any indication that Mr. Baymon posed any sort of security risk to Defendants. Indeed, Mr. Baymon was already restrained by handcuffs and was complying with orders from Defendants when Defendants took the unreasonable and excessive step to place Mr. Baymon in leather full body restraints.

34. Moreover, Defendants kept Mr. Baymon in the leather full body restraints for hours, even after Defendants finished injecting Mr. Baymon with an elixir of medical drugs.

Defendants even placed a bag over Mr. Baymon's head so he could not see what was happening to him. The bag over Mr. Baymon's head restricted Mr. Baymon's breathing.

35. The excessive use of leather full body restraints, under the circumstances, was excessive, unreasonable, and unrelated to any legitimate purpose of the confinement institution. The excessive use of leather full body restraints was used to punish Mr. Baymon given that the use of leather full body restraints was not rationally related to any legitimate purpose, or was otherwise excessive in relation to any purported purpose.

36. Defendants Dr. Menezes and Nurse Alibi ordered the use of leather full body restraints and, on information and belief, Defendants Officer Garcia and Officer Velez placed Mr. Baymon in the leather full body restraints, establishing the intent of all of the Defendants to place Mr. Baymon in leather full body restraints with a bag over his head.

37. As a direct and proximate result of the excessive and unreasonable use of leather full body restraints on Mr. Baymon, Mr. Baymon suffered physical harm to his body and suffered emotional distress relating to the illegitimate use of leather full body restraints and a bag over his head.

**WHEREFORE**, Plaintiff Jimmy Baymon seeks the following relief as to Count I of the First Amended Complaint against Defendants jointly and severally: (1) compensatory damages in an amount to be determined at trial; (2) punitive damages in an amount to be determined at trial; (3) nominal damages; (4) costs and attorneys' fees, and (5) any other such relief as the Court deems just or equitable.

### COUNT II (All Defendants)
### VIOLATION OF DUE PROCESS (42 U.S.C. § 1983)
### EXCESSIVE USE OF FORCE

38. The allegations of paragraphs 1 through 28 are incorporated herein by reference.

39. As described above, Defendants Officer Garcia and Officer Velez used excessive force against Mr. Baymon, without provocation or legitimate penal justification, by punching, dragging, and slamming Mr. Baymon on the ground on or around September 18, 2016.

40. The actions of Defendants Officer Garcia and Officer Velez were performed under color of state law and violated Mr. Baymon's rights under the Fourteenth Amendment to the United States Constitution.

41. The acts of excessive force by Defendants Officer Garcia and Officer Velez against Mr. Baymon were the direct and proximate cause of Mr. Baymon's physical pain, bruising, and emotional distress. Mr. Baymon was damaged by the acts of excessive force.

42. The conduct of Defendants Officer Garcia and Officer Velez was willful and exhibited a flagrant disregard for Mr. Baymon's due process rights. Thus, these Defendants are liable to Mr. Baymon for excessive use of force under 42 U.S.C. § 1983.

43. Defendants Dr. Menezes and Nurse Alibi used excessive force against Mr. Baymon by injecting him by way of needle, repeatedly, with then-unknown substances, when such injections were not medically necessary, were not approved by a psychiatrist, and served no legitimate purpose.

44. Defendants Dr. Menezes and Nurse Alibi acts of excessive force by means of repeated forced injections of various medical drugs were performed under color of state law and violated Mr. Baymon's rights under the Fourteenth Amendment to the United States Constitution.

45. The acts of excessive force by Defendants Dr. Menezes and Nurse Alibi were the direct and proximate cause of Mr. Baymon's physical pain and emotional distress that were

exacerbated by Defendants' excessive use of restraints and the bag that was placed over Mr. Baymon's head. Mr. Baymon was damaged by the acts of excessive force.

46. Because a bag was placed over Mr. Baymon's head, Mr. Baymon was unable to see that he was being injected repeatedly with a series of then-unknown substances. The elixir of medical drugs that Defendants injected Mr. Baymon with by the repeated insertion of needles in Mr. Baymon's arms constitutes excessive force and a violation of Mr. Baymon's due process rights. Thus, Defendants Dr. Menezes and Nurse Alibi are liable to Mr. Baymon under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff Jimmy Baymon seeks the following relief as to Count II of the First Amended Complaint against Defendants jointly and severally: (1) compensatory damages in an amount to be determined at trial; (2) punitive damages in an amount to be determined at trial; (3) nominal damages; (4) costs and attorneys' fees, and (5) any other such relief as the Court deems just or equitable.

## JURY DEMAND

Plaintiff Jimmy Baymon hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: August 12, 2019

By: */s/ Daniel R. Campbell*
Attorney for Plaintiff Jimmy Baymon

Jeffrey E. Stone
Daniel R. Campbell
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street
Chicago, IL 60606-0029

Tele: +1 312 372 2000
Fax: +1 312 984 7700
jstone@mwe.com
dcampbell@mwe.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 12, 2019, I served a copy of the foregoing document upon all counsel of record via email and electronic filing.

/s/ *Daniel R. Campbell*

Daniel R. Campbell

DM_US 161777963-1.099744.0187